UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

Ronald Cressy,                           :
        Plaintiff.                       :
                                         :
    v.                                   :   No. 2:12-cv-00262-wks
                                         :
Kevin Proctor,                           :
        Defendant.                       :

**OPINION & ORDER**

Ronald Cressy has filed a seven-count Complaint against Kevin Proctor. Counts I through VI assert Cressy's right to real and personal property held by Proctor based on theories of partnership, express and implied contract, unjust enrichment, promissory estoppel, and quantum meruit. Count VII asserts Cressy's right to a one-half interest in real property based on theories of express, resulting, and constructive trust. Proctor has moved to dismiss all counts for failure to state a claim upon which relief can be granted. Def.'s Mot. to Dismiss, ECF No. 4. For the reasons set forth below, the Court **denies** Proctor's Motion to Dismiss in its entirety.

### I. Factual Background

When considering a motion to dismiss, the Court accepts as true all allegations set forth in the Complaint. *Gregory v. Daly*, 243 F.3d 687, 691 (2d Cir. 2001). The following facts are contained in plaintiff's Complaint.

Plaintiff Ronald Cressy and Defendant Kevin Proctor began a romantic relationship in California in 1993. They chose to live together in the summer of 1993. When they first met, Proctor owned a recruitment advertising business named Synergy Advertising ("Synergy"). Cressy worked for Carol Anderson, Inc. and earned over $100,000 a year. Cressy left his job in 1994 and began working at Synergy full-time. He did not receive an hourly wage or salary from Synergy.

Synergy became a two-person business operated by Cressy and Proctor at some point between 1994 and 1998. Cressy and Proctor considered themselves to be business partners and described their relationship to customers and others in that way. Proctor ran Synergy's art department and acted as the principal client contact. Cressy handled billing, client contact, and processed advertising.

The parties decided to move to Vermont in 1996. They spent approximately two years looking for a home and chose a property in Ryegate, Vermont ("Ryegate property" or "the property"), which they purchased with proceeds from Synergy. Cressy and Proctor agreed that the property would be titled in both of their names. Cressy could not attend the closing in Vermont because of obligations at Synergy in California. As a result, his name was not on the title to the property. Proctor told Cressy that he would hold title in his name for Cressy and later

transfer title to both of them as joint tenants, but the property remains in Proctor's name only.

Cressy and Proctor moved to the Ryegate property in 1998. The couple purchased personal property worth millions of dollars during their time together. They stopped operating Synergy in 2008 with the intent to generate future income by selling personal property. Cressy and Proctor agreed that they were joint owners of all real and personal property acquired during their relationship.

Cressy and Proctor ended their relationship in the summer of 2012. Cressy moved out of the Ryegate property and now lives in Glendale, California. Cressy is suing Proctor for a share of the real and personal property acquired during their relationship.

## II.  Discussion

Cressy requests relief on a number of grounds: violation of a partnership agreement, breach of contract (express and implied), claims based upon equitable interests (unjust enrichment, quantum meruit, and promissory estoppel), and theories of trust (express, resulting, and constructive). Plaintiff is entitled to plead inconsistent claims in the alternative, Fed. R. Civ. P. 8(d), but recovery on one ground may preclude recovery on any other.

   **a. Standard of Review**

In order to survive a motion to dismiss pursuant to Rule 12(b)(6), the plaintiff need only present a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).[1] The factual allegations in the complaint must establish a plausible right to relief. *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 119-20 (2d Cir. 2010). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

**b. Partnership**

Under Vermont law, a partnership is formed by "the association of two or more persons to carry on as co-owners a business for profit, whether or not the persons intend to form a partnership." 11 V.S.A. § 3212 (a). "In deciding whether a partnership has been created by a tacit agreement, courts must examine the facts to determine whether the parties carried on as co-owners of a business for profit." *Harman v. Rogers*, 147 Vt. 11, 14, 510 A.2d 161, 164 (1986). When considering the rights of the partners relative to each other—as opposed to third parties— "there must be a manifestation of an intent to be so bound." *Id.*

---

[1] Federal Rule of Civil Procedure 8(a) governs the pleading requirements in this case. The heightened pleading under Rule 9 is not required, only a notice pleading under *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Rule 9 pleading is not relevant in this case.

Cressy has alleged facts supporting an inference that the parties operated Synergy as co-owners and shared in the proceeds of the business. Proctor argues that Cressy's failure to state the date, time, and specific content of the partnership agreement is fatal to his partnership claim; however, Cressy is not required to plead specific details of an agreement because a partnership can arise from the parties' dealings with one another. *Harman*, 147 Vt. at 14, 510 A.2d at 164.  The facts alleged in Count I support a plausible claim that the parties were engaged in a partnership.

   c. **Express and Implied Contract**

Cressy argues in the alternative that he is entitled to a share of the property pursuant to an express or implied contract. Cressy's contract claims are based on an agreement that Cressy would work for Synergy in exchange for an equal share of the profits earned and property acquired by the couple. The only difference between express and implied contract claims is the evidence used to establish the agreement between the parties. *Peters v. Poro's Estate*, 96 Vt. 95, 117 A. 244, 246–47 (1922). An express contract is shown through spoken or written words; an implied contract "is to be inferred from the circumstances, the conduct, acts or relation of the parties…." *Id.* Cressy must also show a mutual expectation to be bound by the agreement. *In re Boisvert's Estate*, 135 Vt. 69, 72, 370 A.2d

5

209, 211 (1977). Cressy can satisfy his burden by showing circumstances under which his work at Synergy was performed, "the relative situations of the parties and their financial circumstances." *Id.*

There are disputed issues of fact regarding Cressy's contract claims; however, the facts alleged in Counts II and III are sufficient to support plausible claims for breach of an express or implied contract. Therefore, the motion to dismiss is denied with respect to Counts II and III.

### d. Equitable Claims

Counts IV through VI assert equitable grounds for relief as alternatives to the partnership and contract claims. At this point, the plaintiff has pleaded sufficient facts for his equitable claims to survive the defendant's motion to dismiss.

#### i.  Unjust Enrichment

"Under a quasi-contract theory of unjust enrichment, the law implies a promise to pay when a party receives a benefit and retention of the benefit would be inequitable." *Brookside Memorials, Inc. v. Barre City*, 167 Vt. 558, 559, 702 A.2d 47 (1997). "[T]he inquiry is whether, in light of the totality of the circumstances, it is against equity and good conscience to allow defendant to retain what is sought to be recovered." *Legault v. Legault*, 142 Vt. 525, 531, 459 A.2d 980, 984 (1983) (citations omitted).

6

Plaintiff's allegations of unpaid work and substantial effort in maintaining the home are sufficient to support his claim of unjust enrichment at this stage. Proctor argues that the value of plaintiff's services did not sufficiently exceed the financial support given to plaintiff and therefore the defendant was not unjustly enriched. The value of plaintiff's services, however, is a question of fact that cannot be resolved on a motion to dismiss. *See Global Network Comm'cns, Inc.*, 458 F.3d at 154 ("[W]e are constrained to accept as true the factual allegations contained in the complaint and draw all inferences in plaintiff's favor.").

### ii. Promissory Estoppel

To succeed on a claim of promissory estoppel, the plaintiff must show that (1) defendant made a promise to the plaintiff; (2) that the defendant should have reasonably expected that the promise would induce action or inaction by the plaintiff; (3) that the promise actually did induce action or inaction; and (4) that justice requires enforcement of the promise. *Tour Costa Rica v. Country Walkers, Inc.*, 171 Vt. 116, 120, 758 A.2d 795, 800 (2000). "In determining whether a plaintiff reasonably relied on a defendant's promise, courts examine the totality of the circumstances." *Id.*

Defendant argues that the promise to share in the proceeds of the business is too vague or broad for the purposes of

7

promissory estoppel. While the promise may or may not have broad application, its vagueness is a matter of disagreement, and the facts alleged in Count IV are sufficient to support a claim of promissory estoppel at this stage of the proceedings.

### iii. Quantum Meruit

"Under quantum meruit, one should receive the reasonable value of his services where he justifiably relied on the defendant's request for those services regardless of whether the defendant received a benefit." *In re Estate of Elliot*, 149 Vt. 248, 253, 542 A.2d 282, 286 (1988). Under Vermont law "the distinction between [unjust enrichment and quantum meruit] lies not in the alleged wrong committed by the defendant but rather in the measure of recovery for the wrong." *DJ Painting, Inc. v. Baraw Enters. Inc.*, 172 Vt. 239, 242 n.2, 776 A.2d 416, 416 n.2 (2001).

Plaintiff's quantum meruit claim is couched in the same facts that support the preceding five counts. Defendant objects to the claim, arguing that the plaintiff failed to allege that defendant requested the services. It is reasonable, however, to infer that the defendant requested plaintiff's services at Synergy because plaintiff's labor clearly benefitted the defendant. Accordingly, plaintiff's quantum meruit claim is plausible on the facts alleged in the Complaint.

### e. Additional Claims Related to Real Property

In Count VII, plaintiff asserts his right to a one-half interest the Ryegate property based on theories of express, resulting, and constructive trusts. An express trust is created by a specific intent to do so, and a constructive trust is an equitable remedy imposed by a court to prevent one party from being unjustly enriched at the expense of another. *Savage v. Walker*, 2209 VT 185 ¶ 8, 969 A.2d 121, 124. A resulting trust arises by operation of law when one person purchases real property with his or her own funds and the property is deeded in another person's name. *Gregoire v. Gregoire*, 2009 VT 186 ¶ 15, 987 A.2d 909, 912 (citing *Pinney v. Fellows*, 15 Vt. 525, 538 (1843)). The legal owner of the property holds title for the use and benefit of the individual who furnished consideration for the property. *Id.*

Plaintiff alleges that the parties made an express oral trust agreement that defendant would hold plaintiff's one-half interest in the property in trust for plaintiff. Alternatively, he argues that a resulting trust existed as to a one-half interest because part of the consideration for the property was furnished through plaintiff's work at Synergy, and the property was deeded in defendant's name only. Finally, plaintiff argues that the court should impose a constructive trust on the property to prevent defendant from being unjustly enriched at plaintiff's expense.

Defendant objects to Count VII on various grounds. First, he argues that the Statute of Frauds precludes the claim because there was no written agreement and the plaintiff has not alleged sufficient facts to support an equitable claim for relief. He also argues that the claim is barred by Vermont's six-year Statute of Limitations, which began to run when Cressy became aware that the property was titled in Proctor's name only.

i. **Statute of Frauds**

Under the Statute of Frauds, "a contract involving the sale of land or interests therein 'must be in writing to be enforceable.'" *Rappaport v. Estate of Banfield*, 2006 VT 181 ¶13, 924 A.2d 72, 76; Vt, Stat. Ann. tit. 12, § 181(5) (2012). The Statute of Frauds does not apply "where a party demonstrates that he or she is equitably entitled to the claimed interest in land." *Id.* For this exception to apply, the plaintiff must show that: "(1) there was an oral agreement (2) upon which he reasonably relied (3) by changing his position so that he cannot be returned to his former position, (4) the other party knew of such reliance." *Id.* at ¶ 14, 76. The plaintiff must have "suffered a substantial and irretrievable change in position." *Bassler v. Bassler*, 156 Vt. 353, 358, 593 A.2d 82, 86 (1991).

The plaintiff does not allege that the parties had a written agreement regarding ownership of the property. He relies on the equitable exception to the Statute of Frauds in his claim

to a one-half interest in the property. The facts supporting a claim for equitable relief are laid out in subsection (d) and are sufficient to preclude application of the Statute of Frauds at this point. That the plaintiff worked for 14 years without pay in reliance on a promise by the defendant is sufficient to establish a "substantial and irretrievable change in position." *Id.*

### ii.  Statute of Limitations

Vermont law requires civil actions to be filed "within six years after the cause of action accrues." Vt. Stat. Ann. tit. 12, § 511 (2012). "A cause of action does not accrue until each element of the cause of action exists. A cause of action for breach of contract accrues when the breach occurs . . . ." *Benson v. MVP Health Plan, Inc.*, 2009 VT 186 ¶ 5, 978 A.2d 33, 35 (citations omitted).

According to the defendant, breach occurred—and the cause of action accrued—when the plaintiff became aware that the property was titled in defendant's name only. The plaintiff argues that the express, resulting, and constructive trusts arose at the time of the transfer, and that breach did not occur until 2012 when the parties separated and the defendant refused to convey the property.

Plaintiff's argument for the establishment of a trust— whether express, resulting, or constructive—is plausible based

11

on the facts alleged and creates a dispute over when the limitations period began to run. Therefore, the Statute of Limitations issue cannot be decided at this time.

### III. Conclusion

All of the issues raised in the complaint are adequately pleaded and raise substantial factual questions. In addressing all of the issues, each warrant full discovery. Accordingly, the motion to dismiss is **denied** in its entirety.

Dated at Burlington, in the District of Vermont, this 9th day of April, 2013.

/s/William K. Sessions III\_\_\_
William K. Sessions III
U.S. District Court Judge